[Cite as *Jordan v. Jordan*, 2014-Ohio-1826.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 99890**

---

# JULIE C. JORDAN

PLAINTIFF-APPELLEE

vs.

# RICHARD R. JORDAN, ET AL.

DEFENDANTS-APPELLANTS

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-10-333300

**BEFORE:** Jones, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** May 1, 2014

**ATTORNEYS FOR APPELLANT**

Gregory J. Moore
Anne C. Fantelli
Joseph G. Stafford
Stafford & Stafford Co., L.P.A.
55 Erieview Plaza, 5th Floor
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Richard A. Rabb
Kaitlyn Arthurs
McCarthy Lebit Crystal & Liffman Co.
101 West Prospect Avenue, Suite 1800
Cleveland, Ohio 44115

LARRY A. JONES, SR., P.J.:

{¶1} Defendant-appellant Richard Jordan appeals from the trial court's May 2013 judgment entry of divorce, which ended Richard's marriage to plaintiff-appellee Julie Jordan.   We affirm.

I.   Background

{¶2} Richard and Julie were married on September 10, 1994.   At the time, Julie was 26-years old and Richard was 47-years old.   Prior to marrying, the parties entered into a prenuptial agreement.   Among other things, the agreement defined their separate property and specified its division in the event of divorce.   Three children were born of the marriage, born respectively in 1996, 1997, and 1998.

{¶3} At the time they married, Richard and Julie lived in Hamilton County, Ohio, where Richard owned a home.   In 1997, they purchased a home in Moreland Hills, where they lived together until July 2011, when Julie and the children moved out.

{¶4} In September 2010, Julie filed for a divorce from Richard.   Richard answered and counterclaimed for divorce.   A bench trial spanned over the following dates: February 16-17, 2012, September 4-5, 2012, January 23-25, 2013, and January 28-31, 2013.   When the trial proceedings began in February 2012, the parties entered into a shared parenting plan, whereby they were each designated as the residential parent and legal custodian of the children.

{¶5} In a 58-page judgment entry, the trial court granted the parties a divorce and issued other orders attendant thereto.

II.   Trial Testimony and Evidence

**{¶6}** Both Richard and Julie testified that they considered the prenuptial agreement to be a valid contract. The agreement contained a schedule of the parties' separate assets. At the time the agreement was executed, Richard's assets totaled over $1 million[1] and Julie's assets totaled $11,300.

**{¶7}** Relative to these assets, the agreement provided as follows:

2.1 * * * the property shown on Schedules A and B shall be deemed the "separate property" of the respective parties hereto. Any increase in value of the "separate property" shall be deemed "marital property."

* * *

2.3 All property acquired in exchange or substitution for property separately owned before the marriage as identified in Schedules A and B attached hereto, but not necessarily an exchange or substitution in kind so long as the property can be reasonably traced or identified, shall be considered "separate property."

2.4 Stock, pension and retirement plans owned individually by either party before the marriage shall be deemed "separate property." Any increases, accretions and earnings on the value of any of the above shall be considered "marital property."

**{¶8}** In 1994, approximately one month prior to the parties' marriage, Richard was terminated from his 25-year employment with the David J. Joseph Company and, after the parties were married, was paid a severance and funds from his 401(k) and pension with the company, the total of which was $616,775. Relative to his employment with the company, the prenuptial agreement provided as follows:

2.5 Any monies or benefits received by Richard after the marriage in connection with his employment with or severance from the David J. Joseph Co. shall be deemed the separate property of Richard.

---

[1]Some values for the assets were left blank because the values had not been realized at the time the agreement was executed. Richard testified as to their value at trial.

{¶9} Richard testified that he received $401,775 from the company as a payout from his 401(k) and pension and he "believed" he deposited it into one of his "IRA-type" accounts. He further testified that he received $215,000 in severance payout, but he could not remember into which account he deposited those funds.

{¶10} After Richard was terminated from his employment with the David J. Joseph Company in 1994, he gained re-employment in January 1995 through November 1995, and again from August 1996 through 1999. After that, Richard was a self-employed consultant. He testified that in the time leading up to trial in 2012, he was unemployed and Julie had "sabotaged" his chances of getting any consulting projects. According to Richard, he was living off of $2,000 a month in social security benefits.

{¶11} Julie was employed during the course of the marriage, with the exception of a brief period of time after the birth of one of the children. At the time of trial, she made approximately $85,000 a year.

{¶12} The testimony revealed that when Richard and Julie purchased the Moreland Hills house, the parties agreed that Richard would be responsible for mortgage, taxes, insurance, and utilities for the home, and Julie would be responsible for the other household expenses and the expenses for the children.

{¶13} By 2009, much of Richard's assets, including his retirement assets, had been liquidated and spent, primarily on the mortgage, taxes, and insurance for the Moreland Hills house. The parties had also done extensive renovations and improvements to the home, which Richard testified that he paid for out of his separate funds. Julie presented

evidence that she paid for some of the renovations and improvements. According to Richard, if Julie did pay, he reimbursed her. But Julie testified that she was never reimbursed.

**{¶14}** Richard testified that he and Julie did not sell the house prior to his funds being depleted because the moving costs and sales commission would have been too expensive, and his children liked the school district.

**{¶15}** At the time of trial in February 2012, the parties' non-retirement assets were the Moreland Hills residence and its furnishings, their individual checking accounts, their leased vehicles, and each parties' personal belongings. Julie also had College Advantage 529 accounts for each of their three children.

**{¶16}** Richard and Julie also had their own retirement accounts. As of December 2011, Richard had a traditional IRA account with a $13,114 balance, and a Roth IRA account with a balance of $0.73.

**{¶17}** As of December 2011, Julie had a Roth IRA account with a balance of $4,198; she had a traditional IRA account, but it had a zero account balance. Julie also had a 401(k) account with American Financial Group with a $235,267 balance.

**{¶18}** Richard testified that he made the maximum allowable contributions to his and Julie's retirement accounts from 1994 through 2000.

**{¶19}** Throughout the proceedings, Richard maintained that he was entitled to recover the value of his pre-marital assets (retirement and non-retirement) from the total equity in the Moreland Hills house. Richard contended that he was entitled to this because he used all of his separate money to purchase, pay the mortgage and taxes for,

renovate, and maintain the house.

**{¶20}** Julie stipulated that the $262,458.43 down payment for the Moreland Hills residence came from the sale of Richard's separate, pre-marital residence in Hamilton County, Ohio. The parties financed the remaining $500,000 purchase price over 15 years and had $4,564.32 monthly payments, exclusive of taxes, which were approximately $22,000 annually. In March 2010, the parties refinanced the home, in Julie's name only, which reduced the monthly payment to $737.91.

**{¶21}** After the refinance, Julie made the $737.91 monthly payments, and continued to do so even after she and the children moved out of the house in July 2011, until April 2012, when, according to her testimony, she was no longer able to afford the payments. Richard continued living in the house throughout the pendency of the case.

**{¶22}** Richard sought to keep the house, while Julie requested that it be sold, with an equal division of the net proceeds. Alternatively, Julie sought an award of one-half of the equity in the house; her expert valued the house at $950,000. Richard's expert valued the house at $750,000.

### III. Trial Court's Judgments

**Exclusion of Evidence**

**{¶23}** During trial, the court excluded several documents that Richard sought to have admitted into evidence. The documents were excluded for not being compliant with an order dated April 5, 2012. The April 5 order was issued as a result of a February 2012 motion in limine filed by Julie wherein she sought the exclusion of evidence Richard failed to provide her during the discovery period. At the time the court issued the order,

trial had already commenced and the parties had filed exhibit lists. The order stated in part that Richard was granted until May 4, 2012 to serve Julie

> copies of all trial exhibits (and only those identified in RICHARD JORDAN's Exhibit List filed with the Court) not previously provided by his prior counsel as ordered by this Court, or said exhibits will not be admitted at trial.

(Emphasis sic.)

{¶24} Other exhibits intended to be used by Richard were also excluded pursuant to the trial court's ruling on a second, August 2012 motion in limine filed by Julie. In that motion, Julie sought to exclude exhibits Richard listed in a newly-filed exhibit list. The court held a hearing on the motion, and at the conclusion of the hearing, it adhered to its prior, April 5 order. The court reasoned that because trial had commenced in February 2012, only those exhibits listed on the parties' exhibit lists filed as of the first day of trial, and produced before its prior May 4, 2012 deadline, would be allowed.

**Spousal and Child Support; The Children's Social Security Benefits**

{¶25} Richard sought an award of spousal support from Julie. Richard contended that he had supported Julie's "lifestyle" throughout the marriage, and now that he had depleted his funds and was unemployed, it was "time now for Julie to provide financial support and security to her husband as he provided it to her during the marriage." The trial court denied his request, finding that he was voluntarily unemployed.

{¶26} When Richard began collecting his social security benefits, the children also each began receiving monthly benefits of $556.00, which Richard deposited into accounts for the children. Richard sought to keep depositing the children's social security funds

until each child's emancipation, with the funds then to be used for their college expenses. But, according to Richard, he incurred significant out-of-pocket expenses for the children and, therefore, sought an award against Julie for child support.

{¶27} Richard was obligated to pay Julie child support in the amount of $375.69 per month, but because the children received social security benefits in the amount of $556 per month, the court deviated Richard's obligation to zero.

{¶28} The court denied Richard's request for an award of child support against Julie. The court noted that, under 20 C.F.R. 404.2040(a), the children's social security benefits were meant for the children's "'current maintenance,'" which includes "'food, shelter, clothing, medical care and personal comfort items.'" Trial court quoting *id.* "'If payments are not needed for the beneficiary's current maintenance or reasonably foreseeable needs, they shall be conserved or invested on behalf of the beneficiary.'" *Id.*

{¶29} In denying Richard's request for child support, the court reasoned that "[g]iven the fact that [Richard] claims to expend significant amounts on the children's activities, it is incongruous that he would not need to use the [social security] benefits for some of those expenses."

{¶30} Both Richard and Julie expressed their desire that the children's social security benefits be used for their higher education. Thus, the court ordered that their benefits already accumulated would not be disturbed, but that future benefits could be used for the following expenses: sport activities, including travel team costs, cell phones, school testing fees, graduation fees, driving lessons, and license application fees.

**The Marital Residence**

**{¶31}** The court found, and Julie stipulated, that Richard used the proceeds from the sale of his Hamilton County home for the down payment on the Moreland Hills residence and, therefore awarded him $262,458.43 as his separate property. The court, however, rejected Richard's claim that he was entitled to all of the equity in the home.

## Economic Misconduct

**{¶32}** Richard claimed that Julie engaged in economic misconduct by not paying the mortgage for the marital residence and by withdrawing money from her IRA accounts after the trial court had issued temporary restraining orders prohibiting her from doing so. The court found Richard's contentions not well taken and denied his request for a distributive award based on Julie's alleged misconduct.

## Contempt/Violation of Court's Order

**{¶33}** Richard sought an order of contempt against Julie for violating the trial court's temporary restraining order prohibiting the removal of items from the marital home. The court denied Richard's request.

### IV. Assignments of Error

**{¶34}** Richard assigns seven errors for our review:

I. The trial court erred and/or abused its discretion by excluding evidence at trial.

II. The trial court erred and abused its discretion in denying Richard's request for spousal support.

III. The trial court erred and/or abused its discretion by failing to order Julie to pay child support to Richard; and by ordering the social security benefits for the minor children to be utilized for their expenses.

IV. The trial court erred and abused its discretion by failing to award to

Richard his substantial separate property interests; and by ordering Richard's separate property (the [Moreland Hills] residence) sold.

V.   The trial court erred and abused its discretion by failing to find that Julie's failure to pay the mortgage on the marital residence and liquidation of funds is economic misconduct.

VI.   The trial court erred and/or abused its discretion by failing to find Julie in contempt of the trial court's prior orders, and by failing to enforce its prior orders.

VII.   The trial court erred and/or abused its discretion in its findings and determination relating to its prior temporary restraining order, and its "interpretation" is contrary to the record.

V.   Law and Analysis

**Exclusion of Evidence**

{¶35} Richard's first assignment of error challenges the trial court's order excluding some of his evidence.   The admission or exclusion of evidence is generally within the sound discretion of the trial court and a reviewing court may reverse only upon the showing of an abuse of that discretion.   *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299, 587 N.E.2d 290 (1992).

{¶36} Trial in this matter commenced in February 2012, and did not conclude until January 2013.   In August 2011, Julie filed a motion to compel supplemental documents. The trial court granted the motion, and Richard provided Julie with some documents.

{¶37} In January 2012, prior to the start of trial, the trial court issued a trial order, which provided in part as follows:

> All exhibits shall be pre-marked. * * * No later than 72 hours before the commencement of trial, counsel shall prepare and exchange lists describing or identifying each of the exhibits s/he intends to use or offer at trial.   The list shall be accompanied by a complete set of exhibits.   A complete set of exhibits shall be provided to the Court at trial.

**{¶38}** On February 10, 2012, both Richard and Julie filed their respective exhibit lists. Richard's exhibit list consisted of exhibits A through ZZ. On the same day the parties filed their exhibit lists, Julie also filed a motion in limine to prohibit Richard from using exhibits that were not identified or exchanged. The motion specifically included a request to exclude documents that Richard might use to establish his separate assets and liabilities.

**{¶39}** In April 2012, after two days of trial had already occurred in February 2012, Richard filed a notice of disqualification of his attorney, who had been disciplined by the Ohio Supreme Court. The trial court held a status conference with the parties, including Richard's new attorney, and as a result of the conference, issued the April 5, 2012 judgment, which provided the following:

> Counsel for Richard Jordan is advised that no continuances of the trial set in this matter will be granted due to the unavailability of counsel. Further, counsel for Richard Jordan is granted 30 days, up to and including May 4, 2012, within which to serve on counsel for Plaintiff copies of all trial exhibits (*and only those identified in Richard Jordan's Exhibit List filed with the Court*) not previously provided by his prior counsel as ordered by this Court, or said exhibits will not be admitted at trial.
>
> * * *
>
> Counsel are further advised that inasmuch as trial commenced in this Court on February 14, 2012, *discovery in this matter is closed.*

(Emphasis added.)

**{¶40}** In August 2012, Richard filed a notice of his intent to use four additional documents at trial; the documents were not listed on his February 2012 exhibit list. Julie filed a second motion in limine to exclude the documents. Approximately a week after

Richard filed his first notice of additional documents, he filed a supplemental exhibit list, which included numerous documents also not listed on the February 2012 exhibit list. Moreover, a few days after that, Richard filed a third supplemental exhibit list, which, again, included numerous documents not listed on his original exhibit list.

{¶41} When the trial resumed in September 2012, the trial court stated the following in regard to Richard's additional filings:

> Okay, more motions in limine, all about documents and discovery. I don't understand after two days of trial why we are filing additional witness lists and additional exhibits. This case should have been ready for trial in February. I closed discovery in April when [Richard's new counsel] came on board * * *.

{¶42} The trial court stated that it would consider Richard's additional exhibits on an exhibit-by-exhibit basis. After an issue regarding a document arose, the trial court adjourned for the day. The following day, the trial court stated that it had reviewed the documents at issue. The court found Julie's motion in limine premature as to three of the documents.

{¶43} The majority of the documents related to records from Fidelity Investments. The court stated that it had reviewed the record for subpoenas issued to Fidelity and found five. The first two were discovery subpoenas.

{¶44} The remaining ones were trial subpoenas issued by Richard. One was issued on February 7, 2012, and sought Julie's records, without any limitation as to dates. The second was issued on August 3, 2012, and sought updated documents relative to Julie's accounts for February 2012 through the present. And the last was issued August 21, 2012, and sought the following regarding Richard's accounts: "any and all account

statements from the inception of the account to the present." The documents went back

at least ten years and totaled approximately 700.

**{¶45}** Regarding the last subpoena, the trial court stated:

* * * if documents received in response to the August 21st subpoena are not listed on the * * * February 12th trial exhibit list or produced in the binders, they are not permitted.

The Journal Entry that I signed on April 5th was clear that no exhibits admitted after 5/4 would be allowed, or exhibits produced to the other side by May 4th would not be admitted at trial. So the motion to quash as to the last subpoena is granted and no records beyond what was included in the exhibit list of February 2012 will be permitted at trial.

* * *

You are, by doing what you are doing with Fidelity in this trial subpoena, you're hindering [Julie's] ability to prepare [her] case, and it undermines the purposes of discovery. * * * So, I'm not allowing the Fidelity documents that are in addition to or go beyond the exhibit list * * * otherwise, I'm going to acknowledge that you can do trial by ambush which we know is not permitted.

**{¶46}** Upon review, the trial court did not abuse its discretion by excluding the

documents that were the subject of the three subpoenas. The trial court was specific in its

April 5, 2012 judgment regarding the exchange of discovery. As noted in its judgment, at

that time, trial had already commenced and discovery had been concluded. To allow the

voluminous documents that Richard untimely sought to use would have amounted to trial

by ambush for Julie.

**{¶47}** Accordingly, the first assignment of error is overruled.

**{¶48}** The remaining assignments of error are relative to findings made by the trial

court in its divorce decree. We review a trial court's determination in domestic relations

cases under an abuse of discretion standard. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989). The trial court must have discretion to equitably separate the married parties based on the facts of circumstances of each case. *Id.* Thus, "the term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**Spousal Support**

{¶49} For his second assigned error Richard contends that the trial court abused its discretion by not awarding him spousal support.

{¶50} "It is well-established that the trial court enjoys wide latitude in determining the appropriateness as well as the amount of spousal support." *Sears v. Sears*, 5th Dist. Knox No. 12-CA-09, 2012-Ohio-5968, ¶ 26, citing *Bolinger v. Bolinger*, 49 Ohio St.3d 120, 551 N.E.2d 157 (1990).

{¶51} R.C. 3105.18(B) and (C), governing spousal support, provide:

(B) In divorce and legal separation proceedings, upon the request of either party and after the court determines the division or disbursement of property under section 3105.171 of the Revised Code, the court of common pleas may award reasonable spousal support to either party. * * *

(C)(1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:

(a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;

(b) The relative earning abilities of the parties;

(c) The ages and the physical, mental, and emotional conditions of the parties;

(d) The retirement benefits of the parties;

(e) The duration of the marriage;

(f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;

(g) The standard of living of the parties established during the marriage;

(h) The relative extent of education of the parties;

(i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;

(j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

{¶52} Upon review, the trial court considered the required factors and did not abuse its discretion in denying Richard's request.

{¶53} The court considered the parties' incomes. Julie was earning a yearly salary of approximately $85,000. Richard claimed that he had not realized any income from his consulting business since 2012, and that his sole income was approximately $2,000 in monthly social security benefits. The evidence presented by Richard showed that his monthly expenses were $7,000. Richard testified that he was current on his monthly bills and the real estate taxes on the Moreland Hills house, which were significant.

{¶54} The trial court found it "puzzling" how Richard was able to meet his monthly obligations on his claimed income. The court concluded that, given Richard's ability to pay his bills, he had other sources of income. The court also noted that after the marital home is sold, Richard will have more income.

{¶55} In regard to the earning potential of the parties, the court found Richard voluntarily unemployed. Richard contends that "[n]o evidence was presented at trial which contradicted [his] testimony that he has been 'turned down' for consulting assignments." The court found that since Richard began his self-employment as a consultant in 2000, he had years of earnings, and was able to deposit $131,000 in 2009, and more than $100,000 in 2010, to his checking account. The court therefore found that Richard's claim, despite his income and "impressive resume," that he was unemployable, to be disingenuous.

**{¶56}** Credibility is generally a matter reserved to the trier of fact; thus, we usually will not second-guess credibility determinations. *Sellers v. Sellers*, 4th Dist. Washington No. 09CA45, 2010-Ohio-3712, ¶ 17. The trier of fact is free to believe all, part or none of any witness who testifies before it. *Id.* Questions of witness credibility and evidence weight are matters that the trier of fact must consider and resolve. *Id.*

**{¶57}** On the record before us, we will not disturb the trial court's determination that Richard was voluntarily unemployed. Richard's position throughout these proceedings was that it was Julie's "turn" to "take care" of him because he had brought so many assets to the marriage and had maintained the higher salary throughout the marriage. Such a position supports the trial court's finding that Richard was able to work, but chose not to.

**{¶58}** Moreover, the record does not support Richard's contention that the trial court found him to be underemployed merely because he had retired and began collecting social security benefits. The record demonstrates that Richard began collecting social security benefits when he was 65 years old — a typical retirement age — which occurred in 2012, two years after this case had been pending.

**{¶59}** Richard contended that during his years working for himself as a consultant (2000-2011) his earnings significantly diminished and he was unemployable. The record demonstrates, however, that Richard was able to deposit substantial sums to his checking account during that time frame. For example, in 2010, when he claimed $65,285 in earnings, he deposited over $100,000 to his checking account. Thus, the trial court could properly view Richard's retirement as being different in kind from his voluntary

unemployment, and the record supports that it did just that.

{¶60} In regard to Richard's age and physical state, the court noted that Richard is older than Julie (at the time of trial 64 and 44, respectively), and that he has some physical aliments, including skin cancer and the need for reconstructive jaw surgery. But the court found that, although the ailments may have impacted upon his quality of life, there was no evidence that they prevented him from working. Richard did not present any evidence that he could not work because of his physical condition; therefore, we will not disturb the trial court's finding.

{¶61} The court found that Julie had substantial retirement savings, but that Richard did not. Therefore, although the court did not award spousal support to Richard, it equally divided Julie's retirement assets between the parties, which resulted in approximately $125,000 to each party.

{¶62} In further considering Richard's request for spousal support, the court found that the parties engaged in "overspending" during their 17-year marriage. The court noted that, "[d]espite their inability to keep up with a high monthly mortgage payment, [Richard] testified he chose not to reduce their standard of living by selling the house before their savings were totally liquidated."

{¶63} The court also found that, in addition to $125,000 from Julie's retirement assets, Richard would also be receiving substantial proceeds from the sale of the Moreland Hills house.[2]

_____

[2]The court ordered that Richard would receive the $262,458.43 down payment for the house, and the remaining funds he would receive would be dependent on what the house sold for, but the

**{¶64}** Under the catchall provision of R.C. 3105.18(C)(1)(n), the court reiterated its finding that Richard was voluntarily unemployed. The court noted that he had not attempted to obtain employment outside of his specialized area and did not substantiate his claim that he was "radioactive" as a prospective employee until after the divorce was concluded.

**{¶65}** The court also noted that during the course of the divorce, Richard signed a three-year car lease with a monthly payment of $418; he maintained that if the court awarded the Moreland Hills residence to him he would be able to pay the mortgage, taxes, and insurance for it; he admitted to being able to pay $7,000 a month to cover all his expenses; he testified that he pays the balance on his credit cards each month and lives consumer debt free; and in 2012, he paid $22,000 in real estate taxes on the Moreland Hills house.

**{¶66}** We find that, given the trial court's assessment of the R.C. 3105.18(C) factors, it did not abuse its discretion by denying Richard's request for spousal support. As such, we overrule his second assignment of error.

**Child Support/Children's Social Security Benefits**

**{¶67}** For his third assigned error, Richard contends that the trial court abused its discretion by not awarding him child support and its order relative to the children's social security benefits. According to Richard, although he and Julie have shared parenting of the children, he expends substantial sums for the children for such things as extracurricular activities, school expenses, and their allowances. But he desired to save their social

court estimated that, all-totaled, Richard would receive approximately $500,000 relative to the house.

security benefits for their higher education and, instead, sought an award against Julie for child support to cover his expenses for the children.

{¶68} The court found that both Julie and Richard contribute to the care and maintenance of the children, as well as to their extracurricular activities and, therefore denied Richard's request for child support from Julie. The court did not abuse its discretion in this finding.

{¶69} The parenting schedule, as agreed to by Richard and Julie in their shared parenting plan sets forth that the children will spend more time with Julie than with Richard. Further, the record demonstrates that both parties financially contribute to the children's care and maintenance and extracurricular activities. For example, Julie pays for the children's medical and dental expenses, as well as their cell phone bills. The record demonstrates that both Julie and Richard pay for the children's sport activities, which they are quite involved in and include participation on travel teams.

{¶70} On this record, the trial court did not abuse its discretion by denying Richard's request that Julie pay him child support.

{¶71} We also find that the trial court did not abuse its discretion in regard to the disposition of the childrens' social security payments. The record supports the trial court's finding: if Richard truly had not been able to maintain his portion of the childrens' expenses he would have been using their benefits instead of saving them.

{¶72} In light of the above, the trial court did not abuse its discretion in its decision denying Richard's requests for child support and in its order that the childrens' already accumulated benefits be preserved, but that future benefits could be used for their

expenses.    The third assignment of error is overruled.

**Separate Property and Sale of Moreland Hills House**

{¶73} In his fourth assignment of error, Richard contends that the trial court abused its discretion by not awarding him his "substantial separate property interests," and by ordering the Moreland Hills residence that he claims is his separate property, sold. Richard focuses on the marital house in this assignment of error.   He contends that the funds for the amortization of the mortgage and the improvements to the house came from monies from his separate funds.    Therefore, he sought all of the equity in the house.

{¶74} In a divorce proceeding, marital property includes the following:

(I) All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(ii) All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;

(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage * * *.

R.C. 3105.171(A)(3)(a)(i)-(iii).

{¶75} R.C. 3105.171(C)(1) mandates an equal division of marital property, or, "if

an equal division is inequitable, the court must divide the marital property equitably." *Strauss v. Strauss,* 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37, citing *Neville v. Neville*, 99 Ohio St.3d 275, 277, 2003-Ohio-3624, 791 N.E.2d 434.

{¶76} In contrast to marital property is separate property. Separate property is any real and personal property and any interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). The commingling of separate property with other property does not destroy the identity of the separate property "except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). The party seeking to have certain property classified as separate property has the burden of proof in tracing the separate property. *Strauss* at ¶ 49, citing *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶77} The parties' prenuptial agreement reflects this law as well.

{¶78} The trial court found that Richard commingled his separate funds with marital funds, and failed to meet his burden of proving that the separate funds were traceable to the time of trial. The record supports the trial court's finding and we will not disturb it.

{¶79} The testimony and evidence showed that Richard's accounts, which were listed as his separate property in the prenuptial agreement, were not the same accounts he had at the time of trial. Richard testified that he invested his funds both before and after marriage, had various accounts, and regularly moved money around depending on how the accounts were performing. But Richard was unable to testify what happened to the accounts listed in the prenuptial agreement. For example, Richard was not able to

definitely testify into which account he deposited the funds he received from the David J. Joseph Company. Moreover, Richard did not produce records to demonstrate his separate property claim.

**{¶80}** We are not persuaded by Richard's contention that the trial court engaged in circular reasoning, that is, saying that he did not provide documentation to support his separate property, when he had the documentation but the trial court would not allow it. As previously discussed, some evidence that Richard sought to introduce was excluded, pursuant to the trial court's ruling on Julie's motions in limine, because they were untimely produced as required under the trial court's order; and we find that exclusion was not an abuse of discretion.

**{¶81}** In light of the above, the trial court did not abuse its discretion in finding that Richard was not entitled to all of the equity in the Moreland Hills house.

**{¶82}** We likewise find that the trial court did not abuse its discretion in ordering that the Moreland Hills house be sold. Julie's expert valued the home at $950,000, while Richard's expert valued it at $750,000. The trial court concluded that given the "vast disparity in the experts' opinions as to its value and the financial realities of the parties * * * the most equitable outcome is to sell the Marital Residence."

**{¶83}** As just discussed, the trial court found, and we affirm, that the Moreland Hills house was marital property. Thus, if the trial court had awarded the residence to Richard, he would have had to pay out to Julie her interest in the home. As calculated by the trial court, and not disputed by the parties, there was $541,375 worth of equity in the home using Julie's fair market value figure, and $341,375 worth of equity in the home

using Richard's fair market value. Because there were no other marital assets that the court could have awarded to Julie to equalize the property division, Richard would have had to pay Julie either $170,687 or $270,687, depending on whose fair market value the court used. To order such a payout given the parties' "financial realities" would not have been the most feasible result.

{¶84} Further, when the parties refinanced the mortgage on the house, they did so in Julie's name only. Thus, had the house been awarded to Richard, he would have had to either pay off the existing mortgage or refinance it. Again, given Richard's financial situation, that would not have been the most practicable result.

{¶85} In light of the above, the fourth assignment of error is overruled.

**Economic Misconduct**

{¶86} For his fifth assignment of error, Richard contends that the trial court abused its discretion by not finding that Julie had engaged in economic misconduct. We disagree.

> If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

R.C. 3105.171(E)(4).

{¶87} Richard claims that Julie's economic misconduct consisted of (1) Julie not paying the mortgage on the Moreland Hills residence, thereby causing the initiation of foreclosure proceedings, and (2) her withdrawal of funds from her IRA accounts after the trial court had issued temporary orders preventing her from doing so.

**{¶88}** In regard to Julie's non-payment of the mortgage, the trial court found her explanation that after she moved out the Moreland Hills residence she could not afford to pay her rent and the mortgage well-taken. Competent evidence supported that finding and we will not disturb it.

**{¶89}** Julie moved to another house in Moreland Hills because she wanted her children to remain in the same school district where they had previously been. As a result of her moving out, Julie incurred an additional $2,050 monthly expense. Further, Richard was in arrears on the court-ordered temporary child support he was ordered to pay Julie. At the time Julie stopped making the mortgage payments, the loan was solely in her name. Thus, the credit rating damage of not paying the mortgage inured to Julie, not Richard. Simply, Julie could not meet all her and the children's monthly expenses and continue to pay the mortgage on the Moreland Hills house.

**{¶90}** We agree with the court's finding that Julie should not be "punished" for "putting her and the children's most basic needs (food, shelter, clothing) ahead of the mortgage on a home in which she was not residing and which [Richard] seemed quite able to pay himself."

**{¶91}** For the same reasons, we will not disturb the trial court's finding in regard to Julie removing money from her IRA accounts during the pendency of the case. The record demonstrates that her doing so was simply to meet financial expenses and obligations for herself and her children.

**{¶92}** In light of the above, Richard's fifth assignment of error is overruled.

**Court Orders**

{¶93} In his final two assignments of error, Richard contends that the trial court abused its discretion in certain rulings relative to Julie. Specifically, Richard contends that the trial court should have found Julie in contempt for removing property from the Moreland Hills home in violation of the court's order.

{¶94} In October 2010, the trial court issued a restraining order against Julie whereby it restrained her, in relevant part, from

> * * * removing for sale, transferring, assigning, alienating, selling, encumbering, or disposing of the real estate, personal property, household goods, furnishings, furniture and appliances, including, but not limited to those located [at] 200 Basswood Lane, Moreland Hills, Ohio 44022, except personal effects and tools of trade.

{¶95} Richard filed a motion for an order of contempt against Julie, contending that she had removed items from the home in violation of the court's order. According to Richard, Julie took the children's toys, bedding, sheets, blankets, and pillows. Richard further claimed that Julie had removed kitchen steak knives, a mixer, a serving plate, a lasagna pan, and cookbooks.

{¶96} The trial court held a full hearing on the motion, after which it concluded that Julie had not violated its order.

{¶97} Julie testified that when she moved out of the Moreland Hills house in July 2011, she took the following: a nativity scene, Christmas tree and ornaments, pots and pans, golf clubs, sports equipment, pictures of the family, the children's videotapes, children's clothing, and an old television that had been in storage. She also testified that she took the following of her personal items: files, computer, printer, fax machine, telephone, and stereo.

**{¶98}** "Contempt of court is defined as disobedience of an order of a court. It is conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus.

**{¶99}** Upon review, the trial court did not abuse its discretion by not finding Julie in contempt or in violation of the court's order. Her actions did not disrespect the administration of justice, or did not serve to embarrass, impede, or obstruct the court in executing its functions. Moreover, when asked what he wanted returned out of the items taken, Richard said the Disney movies because he "enjoyed watching some of those with the kids, too. And I would like to be able to pass them along to our grandkids." Richard's reasoning for wanting items returned did not demonstrate that Julie had disrespected the administration of justice, or that her actions served to embarrass, impede, or obstruct the court in executing its functions.

**{¶100}** In light of the above, Richard's sixth and seventh assignments of error are overruled.

**{¶101}** The judgment of the trial court is affirmed.

It is ordered that appellee recover of appellant her costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas Domestic Relations Division to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____

____

LARRY A. JONES, SR., PRESIDING JUDGE

SEAN C. GALLAGHER, J., and
PATRICIA ANN BLACKMON, J., CONCUR