[Cite as *Johnson v. Mills*, 2015-Ohio-4273.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 102241**

## KAREN JOHNSON

PLAINTIFF-APPELLEE

vs.

## KARMARDI MILLS

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART,
REVERSED IN PART AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DR-11-338233

**BEFORE:** Blackmon, J., Celebrezze, A.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** October 15, 2015

**ATTORNEY FOR APPELLANT**

Jack W. Abel
Abel & Zocolo Co., L.P.A
815 Superior Avenue, E.
Suite 1915
Cleveland, Ohio 44114


**ATTORNEY FOR APPELLEE**

Donna J. Ramsey Caputo
13451 Pearl Road
Strongsville, Ohio 44136

PATRICIA ANN BLACKMON, J.:

{¶1}   Appellant Karmardi Mills ("Mills") appeals from the final decree issued by the Domestic Relations Division of the Cuyahoga County Common Pleas Court in his divorce from appellee Karen Johnson ("Johnson").   Mills assigns nine errors for our review.[1]

{¶2}   After reviewing the record and relevant law we reverse the trial court's conclusion that the Louisiana property was marital property and remand for further proceedings.   The apposite facts follow.

{¶3}   Prior to the trial, the parties stipulated to a number of facts.   Mills, born February 6, 1967, and Johnson, born August 7, 1971, were married on December 27, 1997, in Kingston, Jamaica.   No children were born as issue of the marriage.   Both parties earned Ph.D.'s in pharmacology during the marriage, and both attended medical school during the marriage.   Johnson earned her medical degree in 2009.   Mills did not complete medical school.

{¶4}   Between 2005 and 2012, Johnson was employed by Trident University, first as an adjunct professor and then as a professor.   At the time of trial, Johnson was employed by the Cleveland Clinic and had an annual salary of $50,102.   For most of the marriage, Mills was employed as an online professor at Trident University.   As of July

---

[1] *See* appendix.

2012, Mills had an annual salary of $54,016. On March 31, 2013, Mills's employment with Trident University was terminated.

{¶5} The parties jointly or individually own 15 parcels of real estate located in Tennessee, Louisiana, and Ohio. In addition, the parties have joint or individual ownership interest in several bank accounts and brokerage accounts.

{¶6} Trial in the matter was conducted by a magistrate over a six-day period between September 24, 2012 and March 4, 2013. The magistrate issued the decision on January 22, 2014. Mills filed his objections and Johnson filed her brief in opposition. On October 29, after sustaining a number of Mills's objections, the court adopted the magistrate's decisions and issued the divorce decree.

## Spousal Support

{¶7} In the first assigned error, Mills argues the court erred by not awarding him spousal support. Specifically, Mills argues that he should have been awarded approximately $6,645.83 per month or approximately $80,000 per year indefinitely as spousal support.

{¶8} As a general rule, appellate courts review the propriety of a trial court's determination in a domestic relations case for an abuse of discretion. *Kehoe v. Kehoe*, 2012-Ohio-3357, 974 N.E.2d 1229 (8th Dist.), citing *Saari v. Saari*, 195 Ohio App.3d 444, 2011-Ohio-4710, 960 N.E.2d 539 (9th Dist.). Abuse of discretion is more than simply error of law or judgment; it implies that the court's attitude is unreasonable,

arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶9} We also review spousal support issues under an abuse of discretion standard. *See Dunagan v. Dunagan*, 8th Dist. Cuyahoga No. 93678, 2010-Ohio-5232, ¶ 12. As long as the decision of the trial court is supported by some competent, credible evidence going to all the essential elements of the case, we will not disturb it. *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, citing *Masitto v. Masitto*, 22 Ohio St.3d 63, 66, 488 N.E.2d 857 (1986).

{¶10} In determining whether to grant spousal support and in determining the amount and duration of the payments, the trial court must consider the factors listed in R.C. 3105.18. *Robinson v. Robinson*, 8th Dist. Cuyahoga No. 97933, 2012-Ohio-5414. The factors the trial court must consider include each party's income, earning capacity, age, retirement benefits, education, assets and liabilities, and physical, mental, and emotional condition; the duration of the marriage; their standard of living; inability to seek employment outside the home; contributions during the marriage; tax consequences; and lost income due to a party's fulfillment of marital responsibilities. R.C. 3105.18(C)(1)(a)-(m). In addition, the trial court is free to consider any other factor that the court finds to be "relevant and equitable." R.C. 3105.18(C)(1)(n).

{¶11} The court is not required to comment on each statutory factor; the record need only show that the court considered the statutory factors when making its award. *Neumann* at ¶ 17, citing *Carman v. Carman*, 109 Ohio App.3d 698, 703, 672 N.E.2d 1093

(12th Dist.1996).   If the record reflects that the trial court considered the statutory factors and if the judgment contains detail sufficient for a reviewing court to determine that the support award is fair, equitable, and in accordance with the law, the reviewing court will uphold the award.  *Daniels v. Daniels*, 10th Dist. Franklin No. 07AP-709, 2008 Ohio App. LEXIS 772 (Mar. 4, 2008),   citing *Schoren v. Schoren*, 6th Dist. Huron No. H-04-019, 2005-Ohio-2102.

{¶12} In this matter, the court, in pages 6-7 of its analysis, sufficiently addressed each of the factors set forth in R.C. 3105.18 in relation to the evidence presented at trial. The court noted that the marriage lasted 14 years, Mills was 44 years old and Johnson 40 at the de facto termination date of the marriage, and both parties were in good health.

{¶13} The court also noted that during the marriage, both Mills and Johnson completed Ph.D.'s in pharmacology and both attended medical school.   Johnson graduated from medical school and entered a residency in anesthesiology.   It was anticipated that Johnson, who had been making $50,102 per year at the commencement of trial, had the potential of earning upward of $220,000 per year after completing her residency in anesthesiology and a fellowship in pediatric anesthesiology.   Mills did not complete medical school.   At the commencement of trial, Mills was earning $54,016 as an associate professor at Trident University teaching anatomy, physiology, and clinical research.   By the end of trial, Mills's position at Trident University had been eliminated and the evidence suggests that he had not made any significant efforts to obtain new employment.

**{¶14}** The court noted that prior to the end of his employment with Trident University, Mills began pursuing a certification as a Licensed Practical Nurse ("LPN"). In this respect, the court noted that expert testimony established that the national average salary for an LPN is $40,000 while Mills's earning potential as an associate professor would be in the range of $81,000 and $106,000.

**{¶15}** During the marriage, both Mills and Johnson were presented with the same opportunities to further their education, to increase their earning potential, and both completed Ph.D.'s in pharmacology and attended medical school. The evidence established that Johnson has taken full advantage of the academic opportunities presented and positioned herself to increase her earning potential. Mills, on the other hand, has made the arguably curious decision to get certified as an LPN instead of actively seeking employment as a college professor.

**{¶16}** Without passing judgment on the propriety of Mills's deviation from what appeared to have been an upward career trajectory, the evidence suggests his earning potential will be negatively impacted by pursuing a career as an LPN. However, Johnson should not have to bear the burden of Mills's career choices. As such, we conclude, the decision of the trial court is well supported in the record, and there is competent, credible evidence going to all of the statutory elements for not establishing a spousal support order. Accordingly, we overrule the first assigned error.

## Division of Marital Property

{¶17} Central to the next six assigned errors is Mills's claim that the court erred when it divided the marital property. Therefore, we will apply the standard set forth below in addressing all of them.

{¶18} Marital property includes property that is currently owned by either or both spouses and that was acquired by either or both of the spouses during the marriage. *See* R.C. 3105.171(A)(3)(a). Property acquired during a marriage is presumed to be marital property unless it can be shown to be separate. *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 13 (3d Dist.).

{¶19} In dividing the parties' assets in a divorce action, the court starts with the presumption that an equal division of marital assets constitutes an equitable division of the property. *Kapadia v. Kapadia*, 8th Dist. Cuyahoga No. 94456, 2011-Ohio-2255, ¶ 24; *Franklin v. Franklin*, 10th Dist. Franklin No. 11AP-713, 2012-Ohio-1814, ¶ 3; R.C. 3105.171(C). The trial court must make written findings of fact that support the determination that the marital property has been equitably divided. *Franklin* at ¶ 3; R.C. 3105.171(G). The "trial court must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law." *Franklin* at ¶ 4.

### 9209 Green Forest Road, Shreveport, LA 7118

{¶20} In the second assigned error, Mills argues the court erred by concluding that the property located at 9209 Green Forest Road in Shreveport, Louisiana was marital property. Mills contends, that although purchased during the marriage, Johnson, by

agreement, had voluntarily released her interest in the property by virtue of a power of attorney executed at the time the property was acquired.

**{¶21}** The trial court concluded the property was marital property in spite of the parties' agreement. The trial court in so holding relied on the fact that in Ohio, spouses cannot by agreement convert marital assets and debt into separate assets and debt, unless the agreement is pursuant to an immediate separation. R.C. 3103.06; *see also Thompson v. Thompson*, 196 Ohio App.3d 764, 2011-Ohio-6286, 965 N.E.2d 377 (10th Dist.), quoting *Blair v. Blair*, 3d Dist. Marion No. 9-01-36, 2002-Ohio-1023. In the instant case, the parties entered into the agreement prior to any discussion of divorce or separation.

**{¶22}** However, we conclude that Ohio law does not apply here because at the time the parties entered into the agreement, they were domiciled in Maryland. Johnson lived in the marital home in Maryland, while Mills was temporarily living in Louisiana while completing his post-doctorate work. In *Brewsaugh v. Brewsaugh*, 23 Ohio Misc.2d 19, 491 N.E.2d 748 (C.P. 1985), the court held that when determining whether property is marital or separate pursuant to an agreement between the parties, the law of the marital domicile at the time the agreement was entered controls. Md. Code Ann., Family Law § 8-201 provides in pertinent part as follows:

> (2) "Marital property" includes any interest in real property held by the parties as tenants by the entirety unless the real property is excluded by valid agreement.

> (3) Except as provided in paragraph (2) of this subsection, "marital property" does not include property:

* * *

(iii)   excluded by valid agreement; * * *.

**{¶23}** Thus, Maryland does not prohibit the parties from agreeing during the marriage that property is separate. However, even if the parties were permitted to enter into the agreement, Johnson contends that she signed the agreement under duress, which if true, would void the agreement.   *Young v. Anne Arundel Cty.*, 146 Md. App. 526, 597, 807 A.2d 651 (2002).     Johnson testified that she did not want to sign the document but that Mills threatened to not pay other bills if she did not sign.   Mills denies that he used threats to induce Johnson to sign the agreement.   Issues of credibility are for the finder of fact.   *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trier of fact "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility" of the witness.   *Id.*   Therefore, we remand the matter for the trial court to determine whether the agreement was signed under duress.   Accordingly, Mills's second assigned error is sustained.

## Real Property Numbered 1, 2, 3, 5, and 6

**{¶24}** In the third assigned error, Mills argues the trial court erred when it found the above four referenced parcels of real estate to be marital property.

**{¶25}** In the instant case, at the time of trial, the parties' real estate holdings included 15 parcels.   Prior to trial, Johnson and Mills agreed that seven were marital and subject to division, but dispute whether the remaining eight constituted marital property.

One of the eight disputed properties, namely the Shreveport, Louisiana real estate, has already been discussed in the second assigned error. Mills contends that five parcels of real estate located in Nashville, Tennessee, which he acquired between 1993 and 1997, are his separate properties because he acquired them prior to the date of the marriage. After Mills filed his objection to the trial magistrate's report, the court sustained his objections to Real Property Numbered 2 and awarded it to Mills. As such, we will limit our discussion to Real Property Numbered 1, 3, 5, and 6.

{¶26} Separate property is any real and personal property and any interest in real or personal property that was acquired by one spouse prior to the date of the marriage. R.C. 3105.171(A)(6)(a)(ii). *Jordan v. Jordan*, 8th Dist. Cuyahoga No. 99890, 2014-Ohio-1826.

{¶27} However, if commingled marital funds were used to pay the expenses of separate real estate, the real estate is properly considered marital property subject to equitable division. *Robinette v. Robinette*, 8th Dist. Cuyahoga No. 88445, 2007-Ohio-2516, ¶ 23. The party seeking to have certain property classified as "separate property" has the burden of proof in tracing the separate property. *Kaletta v. Kaletta*, 8th Dist. Cuyahoga No. 98821, 2013-Ohio-1667, citing *Strauss v. Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 37. It is that party's burden to trace the funds used to pay for the real estate and establish, by a preponderance of the evidence, that his separate property was not commingled with marital property. *Osborn v. Osborn*, 11th Dist. Trumbull No. 2003-T-0111, 2004-Ohio-6476.

**{¶28}** In the instant case, it is undisputed that properties under discussion herein were purchased by Mills prior to the marriage. However, Mills produced no documentary proof that after almost 15 years of marriage that these separate properties were not commingled with marital property. For example, all the subject properties were put in service as rental units during the marriage, with the attendant rental income and expenses. At trial neither party was able to demonstrate that separate funds were used to pay for the mortgage, upkeep, and renovations of these units. Mills, who bears the burden, failed to present any documentary evidence tracking what money went in and out of his real estate dealings pertaining to these properties that were acquired prior to the date of the marriage.

**{¶29}** In addition, the evidence established that the mortgages on two of these properties were paid off during the marriage, and Mills produced no documentary evidence that nonmarital funds were utilized to that end. Although he contended he used his nonmarital funds from his Schwab account, no documentary evidence was presented. Further, Johnson offered unrefuted testimony of her in-kind effort on behalf of the parties' rental real estate venture.

**{¶30}** In light of the fact that at trial, Mills submitted no documentation demonstrating that nonmarital funds were used for the mortgage, upkeep, and renovations of these properties, we conclude that he has failed to establish, by a preponderance of the evidence, that his separate property was not commingled with marital property. As such, the court did not err in determining that Mills had failed to carry his burden and in finding

that the subject real estate were marital properties. Accordingly, we overrule the third assigned error.

### Tax Consequence of Sale of Real Estate

{¶31} In the fourth assigned error, Mills argues the trial court failed to appropriately allocate the tax consequences occasioned by the forced sale of seven of the real estate holdings.

{¶32} R.C. 3105.171(F) states, in pertinent part:

In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:

* * *

The tax consequences of the property division upon the respective awards to be made to each spouse; * * *.

{¶33} In interpreting R.C. 3105.171(F)(6), the general rule is that if the award is such that it forces a party to dispose of an asset to meet obligations imposed by the court, the tax consequences of that transaction should be considered. *Tochtenhagen v. Tochtenhagen*, 11th Dist. Trumbull No. 2009-T-0011, 2010-Ohio-4557, citing *Rice v. Rice*, 11th Dist. Geauga Nos. 2006-G-2716 and 2006-G-2717, 2007-Ohio-2056, ¶ 31,

{¶34} At page 4 of its analysis, the court stated in pertinent part as follows:

The Magistrate's Decision expressly addressed Defendant's arguments and allocated that [tax] liability equally: "net proceeds after the cost of sale including cost of real property taxes and capital gains tax shall be divided equally. The Court finds no error with the Magistrate's recommendation that Defendant be 100% liable for the cost of determining the additional

depreciation; *however, it will order that any additional taxes as yet unknown shall be allocated equally to each party.* (Emphasis added.)

**{¶35}** Because it is clear from the above that the court considered and ordered that any additional taxes occasioned by the ordered sale of the respective real estate holdings be allocated evenly between Johnson and Mills, we find this claim to be without merit. Accordingly, we overrule the fourth assigned error.

### Schwab Account

**{¶36}** In the fifth assigned error, Mills argues the court erred when it determined that only $21,512.69 of the Schwab account was considered separate property.

**{¶37}** In the instant case, the record established that Mills opened the Schwab account prior to the date of the marriage and that at the time of the marriage the account balance was approximately $21,500. At the de facto termination date of the marriage, the account balance was approximately $59,900. The record also establishes that Johnson's name was added to the account after the parties married. At trial, Mills testified that during the marriage, his salary, rental income from various properties, as well as investment income were deposited therein. Mills also testified that he utilized the Schwab account to pay the mortgages, taxes, and repairs associated with the parties' rental property endeavors.

**{¶38}** As discussed in the third assigned error, a party asserting that an asset is separate property has the burden of proving that claim by a preponderance of the evidence. *Rossi v. Rossi*, 8th Dist. Cuyahoga Nos. 100133 and 100144, 2014-Ohio-1832, citing *Hall v. Hall*, 2d Dist. Greene No. 2013 CA 15, 2013-Ohio-3758, ¶ 14, citing *Peck*

*v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994). By Mills's own testimony, income received and expenses incurred during the marriage were commingled within the Schwab account.

{¶39} If separate property has been commingled with marital property, i.e., put together into a common fund, the party seeking to have an asset treated as separate property must also prove by a preponderance of the evidence that the property can be traced to its prior separate identity. *Strauss*, 8th Dist. Cuyahoga No. 95377, 2011-Ohio-3831, ¶ 49, citing *Williams v. Williams*, 8th Dist. Cuyahoga No. 95346, 2011-Ohio-939, ¶ 10; *see also* R.C. 3105.171(A)(6)(b).

{¶40} Here, Mills offered no evidence as to what portion in excess of the $21,500 in the Schwab account was premarital, as opposed to marital. Mills, therefore, failed to meet his burden as to what portion of the account retained its separate identity. As such, the court did not err when it limited the separate portion of the balance in the account to $21,500. Accordingly, we overrule the fifth assigned error.

### $60,000 Inheritance

{¶41} In the sixth assigned error, Mills argues that the trial court erred in not awarding him $60,044.81, representing a separate inheritance from his parents.

{¶42} Separate property also includes inheritances by one spouse by bequest, devise, or descent during the course of the marriage. R.C. 3105.171(A)(6)(a)(i). Such property remains separate property, even when it is commingled with other property, unless it is not traceable. R.C. 3105.171(A)(6)(b).

{¶43} In the instant case, the record established that Mills inherited approximately $60,000 from his parents by virtue of life insurance proceeds, the sale of his parents' real estate holdings, and portions of their savings. Mills furnished documentation that established that these funds were first deposited into a Bank of America account titled in his name, Johnson's, and Ada Mills. Funds from the aforementioned inheritance were also deposited into Mills's USAA account.

{¶44} The record also established that in ensuing years, sizeable sums of money were transferred from the Bank of America and USAA accounts to the Schwab account. The record also established that Mills's payroll checks were deposited into both accounts. In addition, substantial payments for credit cards, mortgages, and a laundry list of other bills were made from both accounts.

{¶45} A cursory glance of the activities within the three referenced accounts highlight the classic case of commingling as discussed previously. Mills produced no evidence that he segregated the inherited funds from the marital funds. Due to Mills's inability to trace the marital funds from the inherited funds, the court did not err when it declined to award $60,000 as inherited funds. Accordingly, we overrule the sixth assigned error.

### Motor Vehicles

{¶46} In the seventh assigned error, Mills argues the court erred when it did not award half the equity in Johnson's automobile that was acquired during the marriage.

**{¶47}** R.C. 3105.171(C)(1) mandates an equal division of marital property, or, "if an equal division is inequitable, the court must divide the marital property equitably." *Chattree v. Chattree*, 8th Dist. Cuyahoga No. 99337, 2014-Ohio-489, citing *Strauss* at ¶ 37.

**{¶48}** In the instant case, while acknowledging that Johnson's automobile was acquired during the marriage and rightly classified as a marital asset, the court stated:

> R.C. 3105.171(C)(1) permits the Court to divide marital property in an equitable manner, which might not necessarily be equal. Given that defendant had three other automobiles, albeit his separate property, the Court finds no misapplication of the law by the Magistrate in not awarding Defendant one-half of the value of Plaintiff's automobile.

**{¶49}** Under the circumstances, the court's rationale is reasonable. As such, we decline to conclude that an unequal division with respect to the automobile constitute an abuse of discretion. Accordingly, we overrule the seventh assigned error.

## Attorney Fees

**{¶50}** In the eighth assigned error, Mills argues the court erred by not awarding him attorney fees and instead, awarding Johnson attorney fees.

**{¶51}** Pursuant to R.C. 3105.73(A), which governs awards of attorney fees in a divorce action, "a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable." In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate. *Id*.

**{¶52}** An award of attorney fees in a domestic relations action is within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion. *Kehoe*, 8th Dist. Cuyahoga No. 99404, 2013-Ohio-4907, ¶ 18, citing *Dureiko v. Dureiko*, 8th Dist. Cuyahoga No. 94393, 2010-Ohio-5599, ¶ 26. Our review of the award of attorney fees is limited to determining (1) whether the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) whether the domestic relations court abused its discretion. *Gentile v. Gentile*, 8th Dist. Cuyahoga No. 97971, 2013-Ohio-1338, ¶ 68, citing *Neumann v. Neumann*, 8th Dist. Cuyahoga No. 96915, 2012-Ohio-591, ¶ 6, citing *Gourash v. Gourash*, 8th Dist. Cuyahoga Nos. 71882 and 73971, 1999 Ohio App. LEXIS 4074 (Sept. 2, 1999), and *Oatey v. Oatey*, 83 Ohio App.3d 251, 614 N.E.2d 1054 (8th Dist.1992).

**{¶53}** The magistrate, whose decision was adopted by the trial court, stated in pertinent part as follows:

> This was not a simple case, given all the real property owned by the parties, but it did not have to be as complicated as it was or take as long as it did to try. Had Defendant been forthcoming regarding the properties which the parties owned, the rental income he received from the properties, and the amount and value of his securities much of the trial testimony would have been unnecessary. Defendant's recalcitrance in providing discovery was deplorable, and resulted in an unnecessarily lengthy trial. His casual attitude toward Court order cannot be ignored.

Plaintiff had to do the bulk of the discovery with almost no cooperation from Defendant despite his attorney's best efforts. On cross-examination, Defendant was consistently unable to answer questions regarding rental income or expenses, and repeatedly stated, "I would have to check my records," which he never did. Defendant's lack of candor and failure to maintain or provide reliable business records of income and expenses resulted in hours of additional work for Plaintiff's attorney.

**{¶54}** Given this record, the court's award of attorney fees to Johnson and none to Mills is supported by the evidence and within its sound discretion. We refuse to disturb it on appeal. Accordingly, we overrule the eighth assigned error.

## Motion to Show Cause

**{¶55}** In the ninth assigned error, Mills argues that Johnson's motion to show cause should not have been granted.

**{¶56}** In the instant case, on October 22, 2013, Johnson filed a motion to show cause why Mills should not be held in contempt for failing to abide by an agreed judgment entry of September 28, 2012, dealing with the sale of seven real properties that were agreed to be marital assets. Pursuant to the agreement, Johnson and Mills would be responsible for listing and selling three properties each and to cooperate with each other's efforts.

**{¶57}** On December 16, 2013, the magistrate held a hearing, found Mills in contempt. Specifically, the magistrate found that "there was no evidence that Defendant had taken any steps to list any of the three properties which had been entrusted to him to sell." The magistrate sentenced Mills to ten days in jail, but gave him an opportunity to purge if he paid $1,488 in attorney fees within 30 days.

{¶58} Preliminarily, an appellate court's standard of review of a trial court's contempt finding is abuse of discretion. *Cattaneo v. Needham*, 5th Dist. Licking No. 2009 CA00142, 2010-Ohio-4841, citing *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 573 N.E.2d 62 (1991). To show contempt, it is necessary to establish a valid court order, knowledge of the order, and violation of the order. *N. Royalton v. Awadallah (In re Leary)*, 8th Dist. Cuyahoga No. 96424, 2011-Ohio-6626, citing *State v. Chavez-Juarez*, 185 Ohio App.3d 189, 199, 2009-Ohio-6130, 923 N.E.2d 670 (2d Dist.). In civil contempt, intent to violate the order need not be proved. *Id*.

{¶59} Mills does not dispute the magistrate's findings that he failed to list for sale the three properties that he was responsible for selling. Instead, he contends that he withheld his signature from the three Johnson was responsible for selling because of the low asking price. However, Mills provided no transcript of the hearing on the motion to show cause.

{¶60} If an objecting party fails to submit a transcript or affidavit, the trial court must accept the magistrate's factual findings and limit its review to the magistrate's legal conclusions. *Wallace v. Grafton Corr. Inst.*, 10th Dist. Franklin No. 11AP-304, 2011-Ohio-5661, ¶ 5, citing *Ross v. Cockburn*, 10th Dist. Franklin No. 07AP-967, 2008-Ohio-3522, ¶ 5. On appeal of a judgment rendered without the benefit of a transcript or affidavit, an appellate court only considers whether the trial court correctly applied the law to the magistrate's factual findings. *Gill v. Grafton Corr. Inst.*, 10th Dist. Franklin No. 10AP-1094, 2011-Ohio-4251, ¶ 21; *Ross* at ¶ 6.

**{¶61}** Upon review, we conclude the court properly applied the law to the magistrate's factual findings. Accordingly, we overrule the ninth assigned error.

**{¶62}** Judgment affirmed in part, reversed in part, and remanded with instructions to make a determination whether Johnson signed the agreement as to the Louisiana property under duress.

It is ordered that parties share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, JUDGE

FRANK D. CELEBREZZE, JR., A.J., and
MELODY J. STEWART, J., CONCUR

# APPENDIX

Assignments of Error

I. That the trial court erred in not awarding spousal support to the defendant-appellant, and at the very least, by not leaving the issue of spousal support subject to further order of the court. Defendant-appellant, pursuant to the factors enumerated in section 3105.18 O.R.C., is entitled to an award of spousal support from the plaintiff-appellee.

II. That the court erred in finding that property numbered 9 (9209 Green Forest Road, Shreveport, LA 7118) was marital property subject to division. Plaintiff-appellee knowingly and voluntarily released said property in favor of the defendant-appellant and concurred that the same was to be the defendant-appellant's separate property. Accordingly, said property and any rental or proceeds therefrom needed to have been awarded to defendant-appellant.

III. That the trial court erred in finding that all 14 parcels of real estate, excepting parcel #2, were marital properties subject to division. Properties numbered 1, 2, 3, 5, & 6 are defendant-appellant's separate property and the same, and any rental or proceeds therefrom, must be awarded to him.

IV. That the court failed to take into account the tax consequences that may well be occasioned by the force sale(s) of properties 7, and 10 through 15, and failed to appropriately allocate such taxes between the parties.

V. That the court erred in finding that only $21,512.69 of the Schwab account was the defendant-appellant's separate property. The entire Schwab Financial account XXXX-2728 should have been awarded to the defendant.

VI. That the court erred in failing to award to the defendant-appellant the inheritances he received from his father and mother totaling $60,044.81.

VII. That the court erred in not awarding to the defendant-appellant one-half of the equity in plaintiff-appellee's automobile.

VIII. That the court erred in not awarding attorney fees to the defendant-appellant and, instead, in awarding attorney fees to the plaintiff-appellee.

IX. That the court erred in granting plaintiff-appellee's motion to show cause (Motion No. 356532).